UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
NICOLE A. CORREALE-DARLING,                              Chapter 13
        DEBTOR                                                Case No. 07-14395-WCH

_____

MEMORANDUM OF DECISION

I. **INTRODUCTION**

       The matters before the Court are the Motion for Relief from Stay (the "Motion for Relief") filed by Mortgage Electronic Registration Systems, Inc. ("MERS"), the opposition filed by Nicole A. Correale-Darling (the "Debtor"), and the Motion to Clarify Trustee's Modification of Plan Prior to Confirmation (the "Motion to Clarify") filed by Flagstar Bank.[1] The Debtor asserts that the doctrine of laches bars MERS' from seeking relief from stay because the Debtor has, for approximately one year, in good faith, complied with the terms of a plan to which MERS' never objected. For the reasons set forth below, I will enter an order scheduling the Motion for Relief for further hearing.

---

[1] In the Motion for Relief, MERS asserts that it is the holder of the first mortgage on 4 Tilesboro Street, Dorchester, Massachusetts. MERS attached a copy of the mortgage to the Motion for Relief indicating that it is the nominee of Quick Fund, Inc. There is no mention of Flagstar Bank in the Motion for Relief, and Flagstar Bank does not indicate the nature of its interest in the Motion to Clarify. Additionally, in the Motion to Clarify, Flagstar Bank is repeatedly referred to as "Flagstaff Bank." Because I am not granting relief from stay without a further hearing on the matter, for purposes of this opinion I will assume, without deciding, that MERS has standing to bring such a motion in order to decide the narrower issue, namely, whether the mortgagee is barred from seeking relief from stay. I note, however, that standing will be a threshold issue at any further hearing on the Motion for Relief. *See In re Hayes*, 07-13967-JNF, 2008 WL 3870820 (Bankr. D. Mass. Aug. 19, 2008).

## II. BACKGROUND

The Debtor filed a skeletal Chapter 13 petition on July 16, 2007. On August 15, 2007, the Debtor filed the outstanding Schedules and Statements. On Schedule A- Real Property ("Schedule A"), the Debtor lists an ownership interest in real property located at 4 Tilesboro Street in Dorchester, Massachusetts (the "Property"). Based on the address listed on her petition cover sheet, the Property is not her primary residence. On Schedule A, the Debtor valued her interest in the Property at $180,000, while listing a secured claim in the amount of $203,452. Schedule D - Creditors Holding Secured Claims ("Schedule D"), lists Flagstar Bank as the holder of the allegedly undersecured claim on the Property. Schedule J - Current Expenditures of Individual Debtor(s) ("Schedule J"), discloses that the Debtor has monthly net income of $75.22 after the payment of her average monthly expenses, including a monthly mortgage payment of $1,320.78.

The Debtor also filed a Chapter 13 plan (the "Plan") on August 15, 2007. The Plan's certificate of service reflects that the Debtor served the Plan on Flagstar Bank, as well as the Harmon Law Offices, P.C.[2] The Plan itself provides under Section V. OTHER PROVISIONS as follows:

> First mortgage of Flagstar will be bifurcated pursuant to Section 506. Secured portion of $180,000.00 to be paid pursuant to the attached Mortgage calculator exhibit (8% interest on 30 year amortization, balloon on 60th month). Debtor will pay Flagstar directly $1,320.78 for 59 months. In July 2012 and prior to the entry of her discharge, she will pay bank a balloon payment of $170,945.00. Unsecured portion will be treated in accordance with Section IV infra.[3]

Section IV. UNSECURED CLAIMS provides that Flagstar Bank will be paid a dividend of not less than 0% on account of the $23,452 unsecured portion of its claim.

The Court issued the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, &

---

[2] Docket No. 18.

[3] Docket No. 19.

2

Deadlines (the "Notice") on July 17, 2007. The Notice scheduled the meeting of creditors for August 31, 2007, and indicated that objections to confirmation of a Chapter 13 plan shall be filed no later than fifteen days after this date. Accordingly, pursuant to Massachusetts Local Bankruptcy Rule ("MLBR") 13-8(a), the deadline for filing an objection to the confirmation of the Plan was September 17, 2007.[4] No objections were filed by that date.[5]

On May 29, 2008, the Debtor filed an amended Schedule J without a motion to amend, notice of amendment, or certificate of service. The amended Schedule J increased the Debtor's monthly net income from $75.22 to $1,518. Notably, the Debtor's amended Schedule J reduced her monthly mortgage payment from $1,320.78 to $0. The balance of the increase is attributed to a $122 reduction in her monthly discretionary expenditures, including food, recreation, and miscellaneous expenses.

On June 10, 2008, the Trustee filed a Modification of the Plan Prior to Confirmation (the "Modification") increasing the Debtor's monthly plan payments from $75 to $1,518. The Modification further provided that "[s]ecured claim of Flagstar of $77,926.02 to be paid through plan."[6] The Trustee's Summary of Disbursements to be Made Under the Plan (the "Summary") attached to the proposed confirmation order filed the same day explains the treatment of Flagstar

---

[4] The docket reflects that the first date set for the meeting of creditors was actually August 29, 2007. This date was rescheduled the next day when Denise Pappalardo was appointed Chapter 13 trustee after Carolyn Bankowski filed her rejection. Because this date was never noticed out to any parties in interest, I will not consider it for purposes of calculating the objection deadline.

[5] I note, however, that pursuant to an agreed order between the Debtor and the Chapter 13 trustee (the "Trustee"), on September 4, 2007, I extended the deadline for the Trustee to file an objection to confirmation to October 10, 2007.

[6] Docket No. 30.

Bank's claim as follows:

> The first mortgage of Flagstar will be bifurcated pursuant to Section 506. The secured portion of the $180,000.00 will be 8% interest amortized of 30 years with a balloon payment in the 60th month. Debtor will pay Flagstar $77,926.02 through the plan in the sum of $1,298.77 each month. In July 2012 and prior to the entry of her discharge, Debtor will pay the bank a balloon payment of approximately $170,945.00. The unsecured portion will be treated in accordance with Section D, above.[7]

Section D of the Summary indicates that the Plan will pay a 0% dividend to unsecured creditors.

On June 12, 2008, only two days after the Modification was filed, Flagstar Bank filed the Motion to Clarify. It observed that the Debtor's proposed treatment of its claim exceeds the value that the Debtor lists as the secured.[8] Moreover, Flagstar Bank asserted that the Modification increased the proposed monthly payment to an amount higher than the Debtor's monthly net income as disclosed on Schedule J.[9] Accordingly, in the Motion to Clarify, Flagstar Bank requested that the Modification be clarified as to the amount that the Debtor will be paying through the Plan with respect to both the secured and unsecured portions of its claim.

On June 27, 2008, prior to a hearing on the Motion to Clarify, MERS filed the Motion for Relief from Stay with respect to the Property. MERS alleged that it is the holder of a first mortgage on the Property in the amount of $218,879.88. Including an execution in the amount of $1,801.82 held by E.B. Horn Co., MERS asserted that the secured encumbrances on the Property totaled $220,681.70. Using the $180,000 fair market value disclosed in the Debtor's schedules, MERS

---

[7] Docket No. 29. I note that this document is not available on the public docket.

[8] The total proposed monthly payments of $77,926.02 plus the balloon payment of $170,945 equals $248,871.02. The Debtor, however, asserts that the secured portion of the claim is only $180,000.

[9] Flagstar Bank was likely unaware of the amended Schedule J as no certificate of service was filed indicating that the amendment was properly served.

determined that the liquidation value of the Property is approximately $167,879.20.  As the Debtor has no equity in the Property, MERS asserted that relief was warranted pursuant to 11 U.S.C. § 362(d)(2) because it is not necessary for an effective reorganization.  Moreover, MERS alleged that the Debtor failed to make any post-petition loan payments since August 1, 2007, entitling it to relief under 11 U.S.C. § 362(d)(1).  At the time the Motion for Relief was filed, MERS alleged the total post-petition arrearage was $21,113.49.

The Debtor filed her opposition to the Motion for Relief on July 10, 2008.  In it, she admitted her lack of equity in the property, but disputed both the pre- and post-petition arrearage figures alleged by MERS.  The Debtor further responded that MERS "gives no credence to the fact that the debtor's plan which was not objected to calls for a cram down of [MERS'] claim."  Pursuant to the Plan, to which the Debtor argues she has been acting in good faith and abiding by the terms thereof for almost a year, the Debtor asserts that she has paid real estate taxes and insurance on the Property, and has made regular payments to the Trustee.  The Debtor contends that these payments adequately protects MERS' interest in the Property.  Moreover, while the Debtor concedes that she has no equity in the Property at this time, she asserts that it is necessary for an effective reorganization because rental income from the Property allows her to make the payments under the Plan.  The Debtor also anticipates a "rebound" in the real estate market which will afford her equity in the Property.  Relying on the doctrine of laches, the Debtor argues that MERS should be barred from seeking relief from the automatic stay because it failed to object to the Plan timely and now seeks relief one year later because it does not like the Plan's terms.  Implicitly, the Debtor's position is that MERS is bound by the treatment provided in the Plan.

I conducted a hearing on the Motion to Clarify and the Motion for Relief on August 14, 2008.

5

After oral arguments, I took both matters under advisement.[10]

## III. DISCUSSION

Addressing the Motion to Clarify first, Flagstar Bank correctly observes that the Plan is improperly calculated. The Plan, pre-Modification, calls for payments of $1,320.78 to be paid to the secured creditor for fifty-nine months, with a balloon payment of $170,945 in the sixtieth month, while treating the balance of $23,452 as unsecured debt. The sum of these amounts is $272,323.03, $68,871.02 more than what the Debtor alleges is the total amount of the secured claim. The Modification compounds the problem by stating that the Debtor will make payments of $1,298.77 for fifty-nine months totaling $77,926.02, when properly calculated it only amounts to $76,627.43. While the Summary increases the unsecured portion to $23,971, this does not account for the difference in figures.[11]

Aside from the mathematical errors discussed above, the Modification ultimately renders the Plan un-confirmable. As I previously held in *In re Melillo*, plans that provide for secured creditors to be paid periodic payments for the term of the plan with a lump sum payment in the final month violates the "equal monthly payment" requirement of 11 U.S.C. § 1325(a)(5)(B)(iii)(I).[12] Moreover, even in the absence of an objection from the secured creditor, I have "an affirmative duty to review [a Chapter 13 plan] and ensure its provisions comply with the provisions of the Bankruptcy

---

[10] Due to a technical malfunction of the Electronic Court Recording System, a transcript of the hearing is unavailable.

[11] I note that if the Modification increased the unsecured portion of the claim, which under the Plan will receive a dividend of less than 0%, a modification was inappropriate and the Debtor should have filed an amended plan and a motion to approve the amended plan pursuant to MLBR 13-10(b).

[12] *In re Melillo*, 385 B.R. 476, 481 (Bankr. D. Mass. 2008).

Code."[13]  Accordingly, I will order the Debtor to file an amended Chapter 13 plan to correct and clarify the treatment of the secured claim.  To the extent that the Debtor shall file an amended plan, the Motion to Clarify is moot.

To the extent that I find the Plan, as modified, improperly calculated and un-confirmable, the Debtor's laches argument is moot.  Moreover, I note that the Debtor's characterization of the Motion for Relief as simply a late objection to confirmation, albeit in a different form, also fails to capture the essence of the motion.[14]  At its core, the Motion for Relief does not object to the Plan, but rather alleges that the Debtor has not complied with it.  The Plan, both prior and subsequent to the Modification, provides that the secured creditor would receive monthly payments on account of the secured portion of the claim.  The Motion for Relief from stay alleges, *inter alia*, that the Debtor has failed to make *any* payments on account of the mortgage since August 1, 2007.  Even if the Plan had been confirmed as modified, MERS would remain entitled to seek relief from stay for cause under 11 U.S.C. § 362(d)(1).  Because the issue of non-payment was not addressed at the August 14, 2008 hearing, I will schedule the Motion for Relief for further hearing.

---

[13] Id. (*quoting In re Bethoney*, 384 B.R. 24, 26 (Bankr. D. Mass. 2008).

[14] The Debtor also fails to consider the effect of the Modification on the rights of the creditors.  Pursuant to MLBR 13-8(a), as amended May 1, 2008, "any objection to confirmation of a chapter 13 plan shall be filed no later than . . . thirty (30) days after service of a modified plan, unless otherwise ordered by the Court."  Accordingly, even if the Motion for Relief was simply a veiled objection to confirmation, it was timely.

7

## IV. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order directing the Debtor to file an amended Chapter 13 plan, mooting the Motion to Clarify, and scheduling the Motion for Relief for further hearing.

_____
William Hillman
United States Bankruptcy Judge

Dated: August 25, 2008